454 A.2d 621

**COMMONWEALTH of Pennsylvania**

v.

**Charles A. CASUCCIO, Appellant.**

Superior Court of Pennsylvania.

Argued March 17, 1981.

Filed Dec. 30, 1982.

Petition for Allowance of Appeal Denied May 12, 1983.

452

454

William M. Panella, New Castle, for appellant.

Robert F. Hawk, Assistant District Attorney, Butler, for Commonwealth, appellee.

Before PRICE, JOHNSON and MONTEMURO, JJ.

MONTEMURO, Judge:

Following a bench trial in the Court of Common Pleas of Butler County presided over by the Honorable John C. Dillon, the appellant was found guilty of the crime of theft by unlawful taking or disposition, 18 Pa.C.S.A. § 3921(a). Appellant thereafter filed timely post-trial motions which were argued and denied. Appellant was sentenced to the maximum term of not less than three and one-half (3½) years nor more than seven (7) years imprisonment and ordered to make restitution to the victim of the theft in the amount of eleven thousand fifty-nine ($11,059.00) dollars and directed to pay the costs of prosecution. The court subsequently denied appellant's timely filed motion to modify or vacate the sentence. This appeal is from the final judgment of sentence and for the reasons that follow we affirm the trial court's decision.

## HISTORY OF THE CASE

On Friday, September 7, 1979, James M. Brown, a truck driver who lived with his family in Butler County, parked his 1979 Mack tractor and Fruehauf trailer, loaded with twenty-one thousand (21,000) pounds of steel bars, on a lot owned by his friend on South Main Street, Zelienople Borough, Butler County. On Sunday morning, September 9, 1979, Brown's wife drove him to the location where he had left his tractor and trailer so that he could make delivery of

the steel bars to St. Louis, Missouri. The delivery would never be made. Mr. Brown discovered that his tractor and trailer worth approximately sixty-nine thousand eight hundred and ninety ($69,890.00) dollars, together with the load of steel worth approximately ninety-eight hundred ($9800.00) dollars, had been stolen. He reported the theft to the police in Zelienople Borough and completed a routine police report. On that same date, September 9, 1979, the Zelienople Police Department advised the police in neighboring Beaver County of the theft by voice communication and teletype. The department repeated the notification procedure on approximately September 21, 1979.

On September 28, 1979, police from Zelienople Borough, Butler County, police from North Sewickley Township, Beaver County, officers from the Sheriff's Department of Beaver County and two agents from the Federal Bureau of Investigation, numbering in all approximately eleven (11) police personnel, conducted a search on the authority of two (2) search warrants which had been issued on the same day by District Justice Arthur L. Schlemer of Beaver County. The premises designated on Search Warrant E–10879 to be searched were four (4) block and wood garages, three (3) wooden sheds and one (1) aluminum shed located at 1164 Chapel Drive, North Sewickley Township, Beaver County. The premises designated on Search Warrant E–10880 to be searched was a mobile home, white with brown trim located on a lane on the property of Harry Boots, 1164 Chapel Drive, North Sewickley Township, Beaver County. All of the premises to be searched were located on a farm which the tax maps indicated was owned by Harry Boots.

The items to be searched for in Search Warrant E–10879 were identified as a "Hobart Welder ... and a truck said by Harry Boots to be stolen." [1] The item to be searched for in Search Warrant E–10879 was identified as a "color television set, Serial No. 2408 ..." The probable cause for

---

**1.** Although we cannot tell from this record when Harry Boots died, it is clear that he died sometime after his conversation with the informant and before the search warrant was executed.

issuing both warrants was based on information received from a confidential informant who observed the items on the premises on September 27, 1979, the day before the warrants were executed. The affiant on both warrants also stated that he had received information from the confidential informant over a period of seven years and that the information which proved to be reliable led to the conviction of three named individuals.

It is clear from the record that Mrs. Harry Boots, the widow of Harry Boots, owned the farm, the farmhouse, all of the garages and sheds and the mobile home. Mrs. Boots resided in the farmhouse, where she had lived with her late husband; the appellant and Mrs. Boots' daughter, Virginia Korn, resided in the mobile home.

Douglas E. Young, Chief of Police of North Sewickley Township, Beaver County, executed Search Warrant E–10879 by serving same on Mrs. Harry Boots at 12:10 P.M. on September 28, 1979, at the farmhouse. Mrs. Boots indicated she did not know what went on in the garages and sheds and that they were used by appellant with her permission. When informed that the outbuildings were padlocked, she gave her permission to force the locks open as she had nothing to hide.

At about the same time that Chief Young was executing Warrant E–10879, Clyde R. Anderson, Deputy Sheriff of Beaver County was serving Warrant E–10880 on Mrs. Virginia Korn, at the mobile home.

Chief Young and other officers forced the padlocks on the garage doors open and conducted a search. Although the Hobart Welder was never found, a Fruehauf trailer, with a load of steel bars was found in one garage and a partially disassembled 1979 Mack tractor was found in another garage. The trailer and tractor were later identified as the items stolen from Zelienople, Butler County, and belonging to Mr. James M. Brown. Three tool boxes bearing the appellant's initials were found in one of the garages as well. A GMC truck tractor, an attached trailer and a Budd trailer were found on the grounds outside a garage and they were

identified as being stolen in North Sewickley Township, Beaver County. Appellant's pick-up truck carrying miscellaneous parts removed from the stolen tractor trailer units was parked outside the mobile home. Later in the afternoon, the appellant made an incriminating statement, both orally and signed, whereby he admitted his role in the thefts.

When Deputy Sheriff Anderson, accompanied by two other officers, entered the mobile home, Virginia Korn was putting on a robe and appellant was putting on his pants. The officers found men's and women's clothing in the mobile home and also some guns which appellant claimed belonged to him. The officers also found a group of keys belonging to appellant and among these keys were keys which fit the padlocks on the garage doors wherein the stolen trailer and tractor were found. A stolen T.V. was also found in the mobile home but the serial number did not match the serial number on the warrant.

Appellant filed a timely omnibus pre-trial motion. The requested relief set forth in this motion asked the court to: (1) suppress appellant's statement; (2) declare Search Warrant E–10879 invalid; and (3) quash the Information. Following a full hearing on January 22, 1980, appellant's omnibus pre-trial motion was denied in its entirety. On January 23, 1980, after waiving his right to be tried by a jury, appellant was tried non-jury and was found guilty of the theft of Mr. Brown's tractor and trailer as well as the load of steel bars.

Appellant filed timely post-trial motions in arrest of judgment and/or for a new trial which were denied by the trial court. He was then sentenced to a term of imprisonment of 3½ to 7 years and ordered to pay restitution in the amount of $11,059.00.

Appellant then filed a timely motion to modify and/or vacate his sentence. The trial court denied the motion.

In his appeal to this court from the judgment of sentence imposed by the Honorable John C. Dillon of the Court of

Common Pleas of Butler County, appellant raises five claims of error committed by the trial court. We shall discuss them seriatim.

### I.

■ Appellant's first claim of error is that the trial court erred in allowing the Commonwealth to amend the information and thus refusing his motion to quash.

The Criminal Information reads as follows:

### INFORMATION

### IN THE COURT OF COMMON PLEAS OF BUTLER COUNTY

### PENNSYLVANIA

Criminal Division

Criminal Action, 1979   529   69   224

### COMMONWEALTH OF PENNSYLVANIA

v.

### CHARLES A. CASUCCIO

THE DISTRICT ATTORNEY OF BUTLER COUNTY by this information charges that on or about the 9th day of September, 1979, in Zelienople (Borough) the Defendant above named, in the County of Butler, did on or about said date at the Parking Lot of Dairy Kitchen, Rt. 19, Zelienople Borough, Butler County, Pennsylvania, unlawfully and wilfully remove a 1979 Mack Tractor, Serial # R686ST30926 Penna. Reg. Plate # CT82880, also attached a 1979 Fruehauf trailer, Serial No. FWV474070, Penna. Reg. Plate # TE76445, said trailer being loaded with 20 thousand pounds of steel bars, said tractor-trailer load and tools and equipment having a value of $77,-690.00, this being the property of James M. Brown of Box 21, R.D. # 2, Zelienople, Pennsylvania, 16063.

all of which is against the Act of Assembly and the peace and dignity of the Commonwealth of Pennsylvania. Section 3921(a) of Crimes Code.

18 P.S. Sec. 3921(a) (Felony 3rd°)
Citation of Statute and Section

/s/ John H. Brydon
Attorney for the Commonwealth

Appellant says that the trial court erred in permitting the Commonwealth to amend the Information by adding the following words to the factual recitation:

"with intent to deprive the owner thereof."

■ Pa.R.Crim.P. 229 provides that an information may be amended if

"there is a defect in form, the description of the offense, the description of any person or property, or the date charged, *provided the information as amended does not charge an additional or difference offense.*" (Emphasis added) [2]

Appellant claims that the added language is an essential element of the crime with which he was charged and therefore the defect in its omission was a defect of substance and not a defect of form.

The requirements of an Information are set forth in Pa.R.Crim.P. 225, which states in pertinent part:

(b) The information ... shall be valid and sufficient in law if it contains:

(5) a plain and concise statement of the *essential elements* of the offense ... (Emphasis added)

Appellant was found guilty of theft by unlawful taking of movable property and that crime is described in 18 Pa.C.S.A. § 3921(a) as follows:

**2.** Since the rule governing amendment of an information is identical to the rule governing amendment of an indictment, cases interpreting one may be utilized in determining the extent of the other. Pa.R. Crim.P. 220, 229. See *Commonwealth v. Stanley,* 265 Pa.Super. 194, 401 A.2d 1166 (1979), affirmed *Commonwealth v. Stanley,* 498 Pa. 328, 446 A.2d 583 (1982).

"A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another *with intent to deprive him thereof."* (Emphasis added)

■ Although a strict reading of Rule 229 would seemingly support appellant's contention, the purpose behind the rule, as interpreted by prior case law, does not. As we stated in *Commonwealth v. Stanley, Supra,* 265 Pa.Superior Ct. at 212–13, 401 A.2d at 1179:

The purpose of Rule 229 is to insure that a defendant is fully appraised of the charges against him, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed. See *Commonwealth v. Jones,* 250 Pa.Super. 471, 378 A.2d 1245 (1977); *Commonwealth v. King,* 227 Pa.Super. 168, 323 A.2d 260 (1974). In effecting this purpose, the courts of this Commonwealth employ the test of whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

The appellant knew that he was charged with unlawfully and wilfully removing a 1979 Mack tractor with a 1979 Fruehauf trailer attached, said trailer being loaded with 20,000 pounds of steel bars, being the property of James M. Brown, all of this having taken place on or about September 9, 1979, all of which he was informed, was against the Act of Assembly, Section 3921(a) of the Crimes Code and the peace and dignity of the Commonwealth of Pennsylvania. (See Information, *supra* ) The amendment, which added

the element "with intent to deprive the owner thereof" did not result in charging the appellant with an "additional or different offense." Clearly, appellant knew what the charge against him was and he had not said how he was prejudiced by the amendment. Nor could he; because no prejudice existed. Further, this was not an amendment that was made during the trial or post-verdict; it was made *before* trial, during argument on appellant's omnibus suppression motion. Had the suppression court granted the motion to quash, the Commonwealth could have filed another information connected with the addition of the element of "with intent to deprive the owner thereof." We therefore find no error in the allowance of the amendment to the information.

## II.

Appellant's second claim of error is that the trial court erred in allowing the use of appellant's incriminating prearraignment statement, since the time between his arrest and arraignment was greater than six (6) hours. As support for this proposition, appellant cites the decision of our Supreme Court in *Commonwealth v. Davenport*, 471 Pa. 278, 370 A.2d 301 (1977) wherein the court held that unnecessary delay between defendant's arrest and arraignment required suppression of any statement taken from the defendant prior to arraignment. The court adopted a per se rule that required the suppression of any pre-arraignment statement where the time between arrest and arraignment exceeded six (6) hours. Appellant was arraigned at 8:15 P.M. on September 18, 1979. Obviously our focus of inquiry must center upon the time of appellant's arrest. Appellant says that he was under the control of the police from 12:10 P.M. when they entered the mobile home until his arraignment that same evening at 8:15 P.M. We do not agree.

An arrest may be effectuated by any act which indicates an intent to take an individual into custody and subject him to the control and will of the person making the

arrest. *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963); cert. denied *Bosurgi v. Pennsylvania*, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149, (1963); *Commonwealth v. Haggerty*, 495 Pa. 612, 435 A.2d 174 (1981). The test is an objective one, and must be viewed in light of the reasonable impression conveyed to the person subjected to the seizure rather than the strictly subjective view of the officers or the persons being seized. *Commonwealth v. Richards*, 458 Pa. 455, 327 A.2d 63 (1974), *Haggerty, supra.*

We must apply these legal principles to the facts of this case. Here, appellant was not named in either warrant and although Mrs. Harry Boots told Chief Young that the garages were used by appellant, he was unknown to the police at that time; in fact, they had no knowledge that appellant was then in the mobile home. Deputy Sheriff Anderson who executed the search warrant at the mobile home knew that the female occupant was Mrs. Virginia Korn but did not learn of appellant's identity until later in the day. He testified further that appellant was never placed under arrest by him and that in fact appellant was free to leave. (N.T. 91) Contrary to Mrs. Korn's testimony that appellant was "escorted" whenever he used the bathroom,[3] Anderson testified that appellant was not escorted but rather was followed and kept under close observation for the reason that guns had been found in the mobile home and he wanted to make sure that appellant did not attempt to hurt himself or somebody else. (N.T. 91, 92) Leonard Frieson, Special Agent, Federal Bureau of Investigation, was assigned to this "search party" to take pictures of the crime scene and to assist in any other way possible. (N.T. 70) He entered the mobile home at about 2:50 P.M. to take photographs of the T.V. set. (Id. 70). Frieson asked appellant if he would mind speaking to him and appellant indicated he would not. He began an oral interview with appellant at 2:50 P.M. (Id. 71) and after advising appellant of his *Miranda* rights and getting appellant to sign an

---

**3.** This testimony was given at the suppression hearing on appellant's omnibus pre-trial motion at N.T. 74. Mrs. Korn was not called as a witness during the trial.

advise of rights form, he concluded his oral interview with appellant at 3:35 P.M. (Id. at 72) Appellant then signed a written statement wherein he admitted, *inter alia,* stealing the Fruehauf trailer and Mack tractor from Zelienople Borough in Butler County. The written statement was signed at 3:55 P.M. (N.T. Suppression Hearing 37)

George Yaccich, Deputy Sheriff of Beaver County, placed the appellant under arrest at 4 P.M. Yaccich participated in the search of the garages which contained the 1979 Mack tractor and the 1979 Fruehauf trailer. He also found tool boxes in the garage where the 1979 Mack tractor was being disassembled and on the tool boxes there were engraved name plates with appellant's name engraved thereon. He also observed that the Ford pick-up truck, which was parked outside the mobile home and which belonged to either appellant or appellant's father, contained parts which belonged to the disassembled tractor and trailer. Further, he determined that among the keys found in the mobile home, there were some that opened the padlocks on the garage doors and he knew that Mrs. Boots stated that appellant had the keys to the padlocks on the garages. Yaccich also testified that when he went to the mobile home at around 4 P.M., the F.B.I. agents were not there. He did not know that appellant had given a statement, and in fact did not know the identity of the occupants of the trailer. When he was informed by Deputy Anderson of the identity of the occupants he told appellant what they had found in the garages and inquired whether appellant wanted to talk to them. Appellant indicated he did not and he was then read his rights and placed under arrest.

We are satisfied from a reading of the record that the officers who searched the mobile home did not know what was happening during the search of the garages and that the officers involved in the search of the garages did not know of appellant's presence in the mobile home until some time after 3 P.M. We hold that on this record appellant was arrested, at the earliest, at 2:50 P.M., and since the arraignment was well within the time period mandated by

*Davenport, supra,* the trial court did not err in refusing to suppress appellant's inculpatory statement.

Significantly, in *Commonwealth v. Horner,* 497 Pa. 565, 442 A.2d 682 (1982), a case just recently decided on March 17, 1982, a majority of our Supreme Court found there was no *custodial* interrogation where the defendant and three others were transported from the crime scene to the Police Administration Building in a police van which was locked for safety. They entered the building through visitors' doors and sat in witness waiting area; where one of the officers testified that none of the men were free to leave the building, they were nevertheless not in custody; when the officers testified that the area where the men were seated was a secured area and that individuals must be "buzzed" in and escorted out and where the testimony further indicated that only a supervisor could have authorized appellant to leave either the van or the waiting area. Justices Roberts and Nix in separate dissenting opinions concluded that the facts in *Horner* as above set forth constituted *custodial interrogation,* and substantial limitation on the freedom of action of the groups had been imposed by the police. *Commonwealth v. Horner, supra,* 497 Pa. at 578, 442 A.2d at 688. Clearly since the majority of our Supreme Court found that there was no *custodial* interrogation under the facts of *Horner, supra,* we would be hard pressed to agree with appellant here that he was under police restraint from 12:10 P.M. when they first entered the mobile home.

At this point we shall depart from our seriatim analysis of appellant's claim of error and discuss his fourth claim as claim number three in this opinion. We do this for the reason that it is more logical to discuss appellant's lack of probable cause argument first.

### III.

■ Appellant argues that because of lack of probable cause for the essence of the search warrant E–10879, relating to the Hobart welder and "the truck said by Harry

Boots to be stolen," the fruits of the search should have been suppressed. We do not agree.

*In Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Supreme Court of the United States reaffirmed the principle that an affidavit for a search warrant could be based on hearsay. See *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879, (1949); *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), 78 A.L.R.2d 233 (1960). However, the *Aguilar* court added two additional requirements to the affidavit based on hearsay information:

1. the affidavit must state sufficient underlying circumstances to permit a neutral and detached magistrate to understand how the informant reached his conclusion; and

2. the affidavit must state sufficient underlying circumstances establishing the reliability or credibility of the informant. Both halves of this two prong test must be met. *Aguilar,* id. 378 U.S. at 114, 84 S.Ct. at 1514, 12 L.Ed.2d at 729.

The issue then is whether the affidavit in Search Warrant E–10879 contained sufficient underlying facts to support the affiant's assertion of his informant's reliability.

Here the items to be searched and seized were "a Hobart Welder, Model W 24, Serial No. 12CW66257, powered by a Ford industrial engine with tow bar stolen from Yobe, Inc., at intersection of Rts. 288 and 65 in Franklin Township, on August 17, 1979 and truck said by Harry Boots to be stolen."

The probable cause belief on the warrant was based on the following facts and circumstances:

Affiant received information on September 27, 1979, indicating that the informant had observed the above identified welder in an outbuilding of said residence on September 27, 1979. The affiant truly believes the information given him for the reason that the affiant [informant] has proven reliable in information given over a period of

seven years. Information given to affiant from this informant has led to the conviction of twelve individuals and to the affiant's personal knowledge the informant has supplied other police departments with information which has led to convictions on at least two prior occasions. (The application then lists three individuals convicted from information from this informant.) The informant was on the property and personally observed the above items.

A common sense reading of the affidavit supporting the search warrant clearly indicates that sufficient information was provided to the issuing magistrate to show the probability of illegal contraband, in the form of a Hobart Welder, at the place to be searched. *Commonwealth v. Rambo*, 250 Pa.Super. 314, 378 A.2d 953 (1977); reversed on other grounds *Commonwealth v. Rambo*, 488 Pa. 334, 412 A.2d 535 (1980). See *Aguilar v. Texas, supra.*

■ However, the portion of the affidavit authorizing the search for the Mack tractor and Fruehauf trailer was legally insufficient. Clearly the informant's assertion to the affiant that there was "a truck said by Harry Boots to be stolen" on the premises to be searched constituted hearsay on hearsay. There is nothing in the warrant to indicate that the informant saw the truck on the premises although he did say he saw the Hobart Welder on the premises. All the informant knew about the truck was what Harry Boots told him. While we recognize that "double hearsay" is not always fatal to a showing of probable cause in an affidavit where other factors or indicia of reliability are present, we are satisfied that those other factors or indicia are not present here. See *Commonwealth v. Kaschik*, 235 Pa.Super. 388, 344 A.2d 519 (1975). Here the real informant as to the truck was Harry Boots, and as to him neither prong of the two part test in *Aguilar, supra,* is satisfied.

Unfortunately for appellant, our inquiry does not stop here. Although a portion of the search warrant is, as we have said defective, it does not necessarily follow that the entire warrant is invalid or that the fruits of the search

must be suppressed—here, the Mack tractor and the Fruehauf trailer.

In this case, with reference to the Hobart Welder, we have a search warrant which was issued on probable cause, which did particularly describe the premises to be searched and the item to be seized and which met the two prong test of *Aguilar, supra.* It would be totally unrealistic to invalidate the warrant *in toto* merely because the affiant and issuing authority erred in seeking and permitting a search for other items as well and we decline to do so. W. La Fave, *2 Search and Seizure,* § 4.6(f) p. 111 (1978).

The leading case on this question of a warrant's partial invalidity is *Aday v. Supreme Court,* 55 Cal.2d 789, 13 Cal.Rptr. 415, 362 P.2d 47 (1961) where the warrant properly described two obscene books by name but improperly also described various other articles. The court held:

Although the warrant was defective in the respects noted, it does not follow that it was invalid as a whole. Such a conclusion would mean that the seizure of certain articles, even though proper if viewed separately, must be condemned merely because the warrant was defective with respect to other articles. The invalid portions of the warrant are severable from the authorization relating to the named books, which formed the principal basis of the charge of obscenity. The search for and seizure of these books, if otherwise valid, were not rendered illegal by the defects concerning other articles. * * * In so holding we do not mean to suggest that invalid portions of a warrant will be treated as severable under all circumstances. We recognize the danger that warrants might be obtained which are essentially general in character but as to minor items meet the requirement of particularity, and that wholesale seizures might be made under them, in the expectation that the seizure would in any event be upheld as to the property specified. Such an abuse of the warrant procedure, of course, would not be tolerated. See also, *United States v. Ketterman,* 276 A.2d 243 (D.C.App.1971); *Butler v. State,* 130 Ga.App. 469, 203

S.E.2d 558 (1973); *People v. Mangialino*, 75 Misc.2d 698, 348 N.Y.S.2d 327 (1973).

Here the warrant was not essentially general in character; in fact, that portion of the warrant which we have upheld was prepared with particularity.

■ In *Commonwealth v. Millard*, 273 Pa.Super. 523, 417 A.2d 1171 (1979) we held that the "plain view" doctrine permits the seizure of items found while executing a valid warrant naming other objects. Obviously, the mere fact that the item was in plain view does not, ipso facto, justify the seizure. In order for evidence in plain view to be seized without a warrant, there must be *prior valid intrusion*, the discovery must be *inadvertent*, the evidence must be immediately apparent as such and the evidence must be in plain view. *Collidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); C. Whitehead, *Constitutional Criminal Procedure*, Ch. 6 p. 90 (1978).

In the case before us, the police were lawfully on the premises, executing the challenged warrant. The informant had told the police that the day before the warrant was issued he had personally observed the stolen Hobart Welder on the premises described in the warrant. The police also had reason to rely on the informant's information because his information had proven reliable over a period of seven years and had led to the conviction of twelve individuals, three of whom were actually named on the warrant. However, as to the Mack truck and Fruehauf trailer, which the police knew to have been stolen from Zelienople Borough in Butler County, it is clear from this record that they had no way of knowing that these items were to be found on the premises to be searched. We have already demonstrated that there were not sufficient grounds to justify the issuance of a warrant for "a truck said by Harry Boots to be stolen." While the police were conducting a search for the Hobart Welder, which in fact was never found, they came upon the Fruehauf trailer in one of the buildings and in another building they found the partially disassembled Mack tractor. In the same building where they discovered

the tractor, they also found tool boxes with engraved name plates bearing appellant's name.

Although there is considerable difference of opinion as to the meaning of the "inadvertent discovery rule," we agree with Professor LaFave that "if the inadvertent discovery limitation is to make any sense at all, ... it *must* at least mean that a discovery of objects not named in the search warrant is *always* inadvertent... if there were not sufficient grounds to justify the issuance of a warrant which also named those objects among the things to be seized." La Fave, *supra* at 179 (emphasis in original).

This conclusion is consistent with the decision in *United States v. Winston,* 373 F.Supp. 1005, (ED Mich.1974). Agents obtained a search warrant for heroin and firearms. In the course of the search, but before the discovery of heroin, a rifle was found in a closet and was seized because the officers knew defendant to be a convicted felon. On the motion to suppress, it was determined that the part of the warrant authorizing a search for weapons was not supported by probable cause, as the informant had merely told the officers to expect to find guns on the premises. The defendant then objected that the alternative ground for seizure of the rifle, plain view, could not be relied upon here because discovery of the weapon was not inadvertent, but the court disagreed:

What *Coolidge* * * * requires is a search warrant for any items of evidence which the police anticipate finding, *but* for which they have probable cause to support the issuance of a search warrant. It goes without saying that Drug Enforcement Administration agents always anticipate firearms when they execute a search warrant on a suspected "dope pad." This is not to say, however, that they have the requisite knowledge to support a search warrant for such items. In the present case, the police specifically knew, as the affidavit in support of the warrant indicates, only that an informant believed that the defendant possessed a sawed-off shotgun. As has been stated, this belief is not sufficient to support a search

warrant, and thus it follows that the agents did not possess sufficient knowledge with respect to other firearms on the premises and could not have procured a search warrant for them. Furthermore, that the agents, at a briefing session prior to the execution of the warrant, discussed the possibility of the presence of firearms on the premises to be searched is no indication that when the agents came upon such weapons, it was not "inadvertently." *United States v. Winston, Supra,* (Emphasis in original)

We hold therefore that in this case there was a prior valid intrusion by the police and that the discovery of the Mack tractor and Fruehauf trailer, which were in plain view and which were *evidence* of crime, was inadvertent.[4]

## IV.

Appellant's third claim of error which we discuss here in part IV is that the search warrant was defective because the area to be searched was not under the control of the person named in the warrant and that Mrs. Boots had no authority to order the padlocks broken and the garages searched. We find no merit in this claim.

Appellant argues that since he had "control" of the garages wherein the tractor and trailer were found, and since the police knew this before they broke the padlocks on the garages, they were obligated to return to the issuing authority for new warrants. Our reading of the entire record reveals that at best, appellant was given the right to use the garage in return for his agreeing to help in the repair of trucks owned by Albert Boots, the son of Mrs. Harry Boots. It is also clear from the record that Albert Boots also had permission to use the garages. There is nothing in the record to suggest that this very informal

4. The police knew that a Mack tractor and Fruehauf trailer had been stolen. They were searching for a Hobart Welder used to effectuate the disassembly of vehicles and they discovered the tractor and trailer partially disassembled. Clearly the police had reason to believe that the evidence sought to be suppressed *was* of an incriminating nature.

arrangement between Mrs. Boots and appellant in any way deprived Mrs. Boots of at least joint control and use of the garages. Nor is there anything in this record to support a finding that Mrs. Boots knew appellant had padlocked the garages or had given him permission to padlock them. (See Appellant's Brief, p. 20). Indeed, when Mrs. Boots was apprised of the facts set forth in the warrant and that the garage doors were padlocked, she unhesitatingly told the police to go ahead and force the locks open because *she* had nothing to hide.

We are satisfied that under the facts of this case Mrs. Boots never divested herself of control over the garages on her farm. Further, the police had every reason to believe that she, as the widow of Harry Boots, who was the owner of the farm according to the official Tax maps, possessed at least the apparent authority to authorize the breaking of the padlocks and the search of the garages:

> ... if it is otherwise true that under the Fourth Amendment the police are entitled to proceed upon the basis of the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act," even if it results in a "mistake [which] was understandable and ... a reasonable response to the situation facing them at the time," then it is likewise true that a reasonable mistake in determining a third party's authority to consent does not give rise to an unreasonable search. La Fave, *supra*, § 8.3, p. 720.

We are not unmindful that the Fourth Amendment exclusionary rule rests upon a "police misconduct" rationale; that is, unlawfully seized evidence is excluded from trials in order to deter the police from engaging in unlawful conduct. But here the police applied for and received a Search Warrant which was based upon probable cause, which set forth with specificity the area to be searched and the items to be seized and which named the owner of the premises. Since the police acted responsibly, lawfully and free of

misconduct,[5] the deterrent effect of the "police-misconduct" rationale does not exist in this case.

Appellant's argument that when the police learned that he had padlocked the garages and was given permission to use them by Mrs. Boots, the police should have returned to the issuing authority for new Search Warrants, can best be answered as follows:

> When the police are engaged in the difficult and sometimes dangerous business of solving crime, actions which they take in a good faith attempt to do their job should not be reviewed by courts against a holier-than-thou standard of exceedingly technical complexity which the police officers cannot realistically be expected to administer. In other words, judicial determinations of the "reasonableness" of third party consent searches cannot properly ignore the circumstances of the search *as they appeared to the police* to the time the decision to search was made. Specifically, if the police obtain consent to search a house from someone who reasonably appears to them to be in control of the premises and in a position to authorize them to enter, it would be of little social utility for a court subsequently to rebuke the officers by excluding the evidence they obtained during the search on the ground that the person whose consent they accepted in good faith was the "general householder" rather than the "exclusive possessor." Comment, 53 B.U.L. Review 1087, 1110 (1973) (Emphasis in original).

Clearly, if the Fourth Amendment does not preclude a *warrantless search* of property when consent is given by a person possessing the authority to consent to such search, it should not preclude a *search* made *pursuant to a valid search warrant* issued on probable cause following a consent given by the *owner* of the premises who had at least an equal right to the use or occupation of the premises searched. *United States v. Matlock,* 415 U.S. 164, 94 S.Ct.

---

**5.** We note that the police were in full compliance with all of the pertinent Pennsylvania Rules of Criminal Procedure relating to Search Warrants. Rule 2001, *et seq.*

988, 39 L.Ed.2d 242 (1974); *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Bumper v. North Carolina,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1948); *Commonwealth v. Latshaw,* 481 Pa. 298, 392 A.2d 1301 (1978).

## V.

■ Lastly, appellant asserts that the sentence of the court to a term of three and one half (3½) years to seven (7) years was, under the circumstances of this case, harsh and excessive. We do not agree.

■ The imposition of a proper sentence is a matter vested in the sound discretion of the trial court. *Commonwealth v. Ellison,* 293 Pa.Super. 329, 439 A.2d 136 (1982). In order for a sentence to constitute an abuse of discretion, the sentence must either exceed statutory limits or be manifestly excessive. *Commonwealth v. Aviles,* 295 Pa.Super. 180, 441 A.2d 408 (1982); *Commonwealth v. Campolei,* 284 Pa.Super. 291, 425 A.2d 818 (1981). The sentencing judge shall follow the general principle that the sentence to be imposed should cause confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and on the rehabilitative needs of the defendant. *Commonwealth v. Franklin,* 301 Pa.Super. 17, 446 A.2d 1313 (1982). *Sentencing Code,* 42 Pa.C.S.A. § 9701, *et seq.* The sentencing judge must make as part of the record and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. *Commonwealth v. Artis,* 294 Pa.Super. 276, 439 A.2d 1199 (1982). *Sentencing Code,* 42 Pa.C.S.A. § 9721(b); Pa.R.Crim.P. 1405(b).

We have examined the entire record of the sentencing proceedings and find that the sentence imposed was within the statutory limits and that it was not manifestly excessive. Further, the sentencing judge considered a pre-sentence report, discussed probation as opposed to total confinement, considered appellant's character and made specif-

474

ic reference to the provisions of the sentencing code. For these reasons we find that there was no abuse of the discretion so exercised.

Accordingly, judgment of sentence is affirmed.