**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WILFREDO CORDERO | : | No. 2674 EDA 2017 |

Appeal from the Order July 18, 2017
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0000533-2017

BEFORE: GANTMAN, P.J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY McLAUGHLIN, J.:                     **FILED JUNE 26, 2018**

The Commonwealth appeals from the order granting Wilfredo Cordero's motion to suppress. We conclude that the trial court did not err in concluding that the search warrant was unconstitutionally overbroad and in granting the motion to suppress. We affirm.

Cordero was charged with possession with intent to deliver a controlled substance ("PWID"), possession of a controlled substance, and possession of drug paraphernalia. 35 P.S. §§ 780-113(a)(30), 780-113(a)(16), and 780-11(a)(32).

Cordero's arrest occurred following the execution of a search warrant for his residence. The Application for Search Warrant was based on an Affidavit of Probable Cause signed by John Leonard, a police officer with the Vice and Intelligence Unit of the City of Allentown Police Department. Aff. of Probable Cause at ¶ 1. The Affidavit detailed the affiant's experience, including that he

_____

* Retired Senior Judge assigned to the Superior Court.

had been a police officer since 2012 and with the Vice and Intelligence Unit since January 2016, and that he had participated in "more than 75 search and seizure warrants," "participated in the arrests of numerous individuals" for drug violations, and "interviewed numerous drug users and drug distributors." *Id.* at ¶ 2. The affiant stated that, based on his experience, "large scale dealers" or "narcotic traffickers": (1) "maintain books, receipts, notes, ledgers, relating to the purchase of financial instruments and/or the transfer of funds, and other papers relating to the transportation, ordering, sale, and distribution of Controlled Substances"; (2) "secret contraband, proceeds of narcotics sales, and records of drug transactions in secure locations within their residences of relatives [sic] and associates, safe deposit boxes, and/or other locations (including buried on the grounds thereof)"; (3) "build 'stash' places within their residences"; (4) "maintain evidence pertaining to their obtaining, secreting, transfer, concealment and/or expenditure of drug proceeds; such as: currency, financial instruments, precious metals, and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letters of credit, money orders, bank drafts[,] cashier's checks, bank checks, safe deposit box keys, and money wrappers"; (5) "maintain addresses or telephone numbers in books or papers which may reflect names, addresses, and/or telephone numbers of their associates in the trafficking organization, and/or individuals involved in their money laundering activities"; (6) "take or cause to be taken photographs of themselves, their associates, their property,

and their product using still photographs, digital photographs, video cameras, and/or camera phones"; (7) "have in their possession[,] that is on their person, at their residence and/or their businesses, firearms"; and (8) "utilized cellular telephones to make telephone calls to and receive calls from customers and sources of supply and associates." *Id.* at ¶ 3.

The affiant then detailed three occasions where a confidential informant texted "Will" at a specified phone number, entered the rear door of Apartment 1 at 950 West Liberty Street, and returned with a "white in color rock-like substance," which tested positive for cocaine. *Id.* at ¶¶ 6-9. The affiant further stated that he conducted surveillance of 950 West Liberty Street at diverse times in the month preceding the application. *Id.* at ¶ 10. He observed people "entering the building," but "only stay[ing] for brief moments" and observed from the sidewalk, numerous "glass pipes commonly used to smoke crack[] littered around [the] curtilage" of the location. *Id.* ¶

The search warrant then listed the following items to be seized:

> 1. Computers and their contents, books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances, as mentioned in the probable cause affidavit.
>
> 2. Papers, tickets, notes, receipts, and other items relating to domestic and international travel.
>
> 3. Books records, invoices, receipts, records of real estate transactions, bank statements and related records, money draft, letters of credit, money orders, bank drafts, and cashier's checks, bank checks, safe deposit box keys, money wrappers, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the

obtaining, secreting, transfer, concealment and/or expenditure of money.

4. Electronic equipment, such as facsimile machines, currency counting machines, telephone answering machines, and related manuals used to generate, transfer, count, record and/or store the information described in items 1, 2, 3, and 5 of this appendix.

5. United States Currency, precious metals, jewelry, and financial instruments, including stocks, bonds, money orders and traveler's checks.

6. Photographs, including still photographs, negatives, video tapes, films, undeveloped film, slides, digital media, digital media storage devices, in particular photographs of co-conspirators, of assets and/or controlled substances.

7. Address and/or telephone books, any papers reflecting names, address, telephone numbers, pager numbers, fax numbers and/or telex numbers of co-conspirators, source of supply, customers, financial institution, and other individuals or businesses with whom a financial relationship exists.

8. Indicia of occupancy, residency, and/or ownership of said premises, described in the probable cause affidavit, including but not limited to: Utility bills, telephone bills, rent receipts, rental agreements, cancelled envelopes, sent via U.S. Postal Service, clothing and keys to door locks of said premises.

9. Weapons, including but not limited to handguns, shotguns, rifles, and automatic weapons, including any and all stolen handguns, shotguns, rifles, and automatic weapons and ammunition.

10. Cellular telephones and their contents, including but not limited to SMS and other text messaging, contacts, stored photographs and/or videos, stored incoming and outgoing call information.

11. Documents pertaining to ownership and/or control of other locations by the way of leases, keys, utility bills, and other documents.

12. Controlled substances and paraphernalia for the use or distribution of controlled substances.

13. All persons present at 950 West Liberty Street, Apartment #1, Allentown Pa 18102.

Application for Search Warrant, Appendix A (emphasis omitted).

On April 24, 2017, Cordero filed an Omnibus Pre-trial Motion, which included a motion to suppress the evidence discovered during the search of his residence. He argued the search warrant was overbroad and contained an unreasonable discrepancy between the descriptions of items to be searched for and seized and the allegations in the affidavit of probable cause. Omnibus Pretrial Mot., filed Apr. 24, 2017, at ¶ 14.

On June 14, 2017, the trial court held a hearing on the motion and permitted Cordero to file a letter brief in support of the suppression issue. On July 18, 2017, it granted the motion to suppress evidence obtained as a result of the execution of the search warrant. The court found the Application for Search Warrant was overbroad and "not tailored to fit the facts of the within matter," and therefore the police officers obtained the evidence in violation of Article 1, Section 8 of the Pennsylvania Constitution. Trial Court Opinion, filed July 10, 2017, at 6. The Commonwealth filed a timely notice of appeal, which included a certification that the order "will terminate or substantially handicap the prosecution." Notice of Appeal, filed Aug. 16, 2017; Pa.R.A.P. 311(d).

The Commonwealth raises the following issues on appeal:

1. Did the lower court err when it deemed the search warrant overbroad and invalid thereby suppressing physical evidence properly seized?

2. In any event, are the purported overbroad portions of the search warrant severable?

Commonwealth's Br. at 4 (suggested answers omitted).

First, the Commonwealth argues that the trial court erred in granting the motion to suppress. It claims the court overlooked portions of the warrant, including the affiant's training and experience and his observations. It further notes that there is only one crime for drug dealing, PWID, and it does not have different degrees based on the number of exchanges or type of controlled substance. It further argues that whether the defendant is involved in a large or small drug operation is irrelevant. The Commonwealth concludes that, based on the totality of the circumstances—the affiant's training and experience, his personal observations, and the information from the confidential informant—the list of potential items was reasonable and the warrant was not overbroad.

"Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010). "Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, 'whose duty it is to determine if the suppression court properly applied the law to the facts.'" ***Id.*** (quoting ***Commonwealth v. Mistler***, 912 A.2d 1265, 1269 (Pa. 2006)).

The Pennsylvania Supreme Court has further explained that:

It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

. . .

[Further,] a reviewing court [is] not to conduct a *de novo* review of the issuing authority's probable cause determination, but [is] simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.

*Id.* at 655 (quoting ***Commonwealth v. Torres***, 764 A.2d 532, 537–38, 540 (Pa. 2001)) (alterations in original).

Article I, Section 8 of the Pennsylvania Constitution provides, in pertinent part: "[N]o warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause . . . ." Pa. Const. Art. I § 8. This Court has explained that "a warrant must name or describe with particularity the property to be seized and the person or place to be searched." ***Commonwealth v. Orie***, 88 A.3d 983, 1002 (Pa.Super. 2014) (quoting ***Commonwealth v. Rivera***, 816 A.2d 282, 290 (Pa.Super. 2003)). "The particularity requirement prohibits a warrant that is not particular enough and a warrant that is overbroad," which are separate, but related, issues. ***Id.*** (quoting ***Rivera***, 816 A.2d at 290). A warrant is unconstitutional due to a lack of particularity where it "authorizes a search in terms so ambiguous as to allow the executing officers to pick and choose among an individual's possessions to find which items to seize." ***Id.***

(quoting *Rivera*, 816 A.2d at 290). A warrant is unconstitutional as overbroad where it "authorizes in clear or specific terms the seizure of an entire set of items, or documents, many of which will prove unrelated to the crime under investigation." *Id.* at 1002-03 (quoting *Rivera*, 816 A.2d at 290). "An overbroad warrant is unconstitutional because it authorizes a general search and seizure." *Id.* at 1003 (quoting *Rivera*, 816 A.2d at 290).

In assessing the description's validity, "a court must initially determine for what items probable cause existed." *Id.* (quoting *Rivera*, 816 A.2d at 291). The court must then measure "[t]he sufficiency of the description . . . against those items for which there was probable cause." *Id.* "Any unreasonable discrepancy between the items for which there was probable cause and the description in the warrant requires suppression. An unreasonable discrepancy reveals that the description was not as specific as was reasonably possible." *Id.*[1]

In *Commonwealth v. Grossman*, the Pennsylvania Supreme Court concluded that a search warrant was unconstitutionally overbroad where it allowed a search for and seizure of "[a]ll insurance files, payment records, receipt records, copies of insurance applications and polices, [and] cancelled checks." 555 A.2d 896, 897, 900 (Pa. 1989) (some alterations in original).

---

[1] Pennsylvania's requirement that the warrant describe the items to be seized "as nearly as may be" is "more stringent" than the Fourth Amendment's requirement of particularity in the description, *Orie*, 88 A.3d at 1003, and it requires that the warrant "describe the items as specifically as is reasonably possible." *Id.* (quoting *Rivera*, 816 A.2d at 290).

The affidavit in support of the warrant application, included facts regarding irregularities in three client files and then concluded "there [was] sufficient probable cause to believe [the defendant] . . . fraudulently executed various documents in connection with an ongoing scheme to defraud insurance applicants." *Id.* at 900 (some alterations in original). The Court noted that "[a]lthough . . . the police may have had suspected that other clients were being defrauded, the affidavit that was placed before the issuing judge did not include any such additional information." *Id.* The Court held that, although there was probable cause to search for the files of the three named clients, there was not probable cause to search the other files. *Id.* The Court held the warrant was unconstitutionally overbroad and suppressed all evidence seized as a result of the warrant. *Id.*

In **Commonwealth v. Orie**, this Court addressed a series of search warrants. We found that the warrant for a flash drive was overbroad where it sought "any contents contained therein, including all documents, images, recordings, spreadsheets or any other data stored in digital format." **Orie**, 88 A.3d at 1008. We noted there was no limitation to account for non-criminal use of the flash drive. *Id.* We similarly found that a search warrant for an email account seeking "all stored communications and other files . . . between August 1, 2009 and the present, including all documents, images, recordings, spreadsheets or any other data stored in digital format," was overbroad. *Id.* (alteration in original).

In **Orie**, we denied relief because, although the flash drive and email account were seized pursuant to an overbroad warrant, the police did not search the flash drive or account until subsequent, more detailed warrants that provided particularity were issued. **Id.** at 1008. In **Commonwealth v. Melvin**, 103 A.3d 1, 17 (Pa.Super. 2014), we addressed search warrants for email accounts similar to the warrant issued in **Orie**. We concluded that the trial court erred in not granting the motion to suppress because the warrant was overbroad and, unlike in **Orie**, there were no "unique facts" in **Melvin** from which to conclude the search was proper. **Id.** at 18-19. The police did not obtain a second search warrant following seizure of the email account and prior to the search. **Id.** at 19.

Here, the trial court concluded the search warrant was "overbroad and not tailored to fit the facts of the within matter," and, therefore, the police officers had seized the evidence in violation of Article I, Section 8 of the Pennsylvania Constitution. Trial Ct. Op., at 6. The trial court reasoned that the Application and Affidavit of Probable Cause described street-level dealing for three single purchases of cocaine by the same confidential informant. **Id.** at 7. The drug transactions "were arranged via text messaging to the same cellular telephone number . . . and were effectuated at the rear door of an apartment building." **Id.** The court noted that the facts supported the issuance of a search warrant and seizure of "cocaine, currency, drug paraphernalia, records consistent with the selling of cocaine, and the single cellular telephone." **Id.** The court, however, found the facts did "not support a warrant

that would allow for the search and seizure of items consistent with a large scale drug trafficking operation." *Id.* The court noted that the warrant allowed for the search and seizure of items associated with a large scale drug trafficking organization. *Id.* The items listed were "so broad and overreaching that [the warrant] allow[ed] for the seizure of entire sets of items unrelated to the crime for which [Cordero] was under investigation." *Id.* at 7-8. It concluded that an unreasonable discrepancy existed between the items for which probable cause existed and the "generally described voluminous list set forth in Appendix A of the Application for Search Warrant." *Id.* at 8.

We agree. The warrant permitted a general search and seizure at Cordero's residence. The Application for a Search Warrant and Affidavit of Probable Cause contained evidence to establish probable cause existed to believe cocaine and items associated with the distribution of cocaine would be found in the home. They did not, however, contain probable cause to search for many of the items listed, including, but not limited to, "[c]omputers and their contents, books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances," "[p]apers, tickets, notes, receipts, and other items relating to domestic and international travel," "record of real estate transactions, bank statements and related records," "precious metals, jewelry, and financial instruments," and "cellular telephones and their content." Application for Search Warrant, Appendix A. Such categories were broad, and, as in *Orie*, the warrant made no limitation for the non-criminal use of the items.

Further, the affiant's experience and knowledge contained in the affidavit did not provide the necessary link to establish probable cause. The affiant stated his experience with "large scale" dealers or "narcotics traffickers." He provided no information to establish that Cordero was a large scale drug dealer or narcotics trafficker. Rather, the facts state that a confidential informant, on three occasions, texted the same phone number, entered the rear door of Apartment 1, and returned with cocaine. This does not establish probable cause to believe that Cordero was a large scale dealer or narcotics trafficker. Further, the additional facts observed by the affiant, including people staying inside the building for only brief periods and drug paraphernalia on the sidewalk, do not change the outcome. Because the residence was an apartment, and others likely lived at the street address, without more to connect such observations to Cordero or his apartment, we cannot conclude that this provides a nexus to support a conclusion that Cordero was a "large scale drug dealer" or "narcotic trafficker."[2] *See Grossman*, 555 A.2d at 900; *cf. Commonwealth v. Iannelli*, 634 A.2d

_____

[2] The Application includes the following description of the residence to be searched: "950 West Liberty Street Apartment #1 Allentown PA 18102. 950 West Liberty Street is a three story multi-unit apartment complex with white in color exterior brick and a flat roof. Apartment# 1 is located on the first floor and has a white in color exterior door that exits into the rear yard of 950 West [L]iberty St." Application for Search Warrant at 1. The Application and Affidavit do not contain information regarding the number of apartments in the building. Further, the affiant states he observed people entering the building and leaving shortly, but does not say whether such people entered through the white door that exits into the rear yard.

1120, 1130-31 (Pa.Super. 1993) (finding search warrant not overbroad where affidavit established probable cause to believe defendant was at top of corrupt organization, that he received income from pattern of racketeering activity, and that he headed organization formed for purpose of engaging in commerce of running illegal lotteries and bookmaking operations).[3]

The Commonwealth next contends that even if the warrant was overbroad, the trial court erred in failing to apply the doctrine of severance. It claims the trial court "should have severed the warrant and deemed the items seized, which were plainly supported by probable cause, to be admissible." Commonwealth's Br. at 21.

"The doctrine of severance mandates that invalid portions of a search warrant may be stricken and the remaining portions held valid, as long as the remaining portions of the warrant describe with particularity the evidence to be seized." **Commonwealth v. Bagley**, 596 A.2d 811, 824 (Pa.Super. 1991). The doctrine, however, does not apply where the warrant is "essentially general in character." **Commonwealth v. Casuccio**, 454 A.2d 621, 630 (Pa.Super. 1982). This Court noted that:

> [W]e do not mean to suggest that invalid portions of a warrant will be treated as severable under all circumstances. We recognize the danger that warrants might be obtained which are essentially general in character

---

[3] We do not agree with the Commonwealth's contention that, because there is only one Pennsylvania crime for the distribution of drugs, a search warrant can seek to search for all items associated with drug dealers, regardless whether the warrant establishes a nexus between the alleged dealer and the item to be searched for and seized.

but as to minor items meet the requirement of particularity, and that wholesale seizures might be made under them, in the expectation that the seizure would in any event be upheld as to the property specified. Such an abuse of the warrant procedure, of course, would not be tolerated.

*Id.* (quoting ***Aday v. Superior Court of California***, 362 P.2d 47 (Cal. 1961).[4]

Here, the warrant was general and, therefore, we decline to apply the severance doctrine. Many of the listed items were general categories and were not supported by probable cause, including, but not limited to, computers and their contents, items relating to domestic and international travel, cellular telephones and their contents,[5] and financial statements. Further, even for the items for which probable cause did exist, the items were not described with particularity. The affidavit stated that Cordero sold the informant cocaine. The items to be searched for, however, included "[c]ontrolled substances and paraphernalia for the use or distribution of controlled substances." Accordingly, we conclude the trial court did not err in declining to sever the search warrant.

Order affirmed.

_____

[4] Cordero argues that the severance doctrine is unconstitutional under the Pennsylvania constitution. Because we conclude that, even if constitutional, the doctrine would not apply here, we do not reach this question.

[5] Probable cause existed to seize the cellular telephone with the telephone number contacted by the informant. It did not exist, however, to seize all cellular telephones.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/26/18