435 So.2d 674 (1983)
Carl E. LEE and Travis Howard Lee
v.
STATE of Mississippi.
No. 53660.
Supreme Court of Mississippi.
July 13, 1983.
Rehearing Denied August 17, 1983.
*675 Fielding L. Wright, Pascagoula, Joe Ray Langston, Duncan Lott, Langston & Lott, Booneville, for appellants.
Bill Allam, Atty. Gen. by Robert D. Findley, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before BROOM, P.J., and PRATHER and ROBERTSON, JJ.
PRATHER, Justice, for the Court:
This case is an appeal from the Circuit Court of Jackson County, wherein the appellants, Carl E. Lee and Travis Howard Lee, were convicted of two drug-related crimes. The first count charged both defendants with possession of certain controlled substances, and the second count charged both defendants with possession of marijuana with intent to deliver the same. Following a guilty verdict, the defendants each received a prison term of three years on the first offense and a term of eight years on the second offense to run concurrently. The appellants assert errors in:
(1) The trial court's failure to suppress incriminating evidence obtained as a result of an allegedly inadequate search warrant procedure, and
(2) The alleged improper comments of the prosecution during argument.

FACTS
Officers Terry Warden and Ronnie Wilks of the Jackson County Sheriff's office received information from an informer that there were narcotics at the apartment of the defendants. They obtained a search warrant from a justice court judge at approximately 10:45 p.m., on January 29, 1980, and searched the defendants' residence. The search resulted in the confiscation of one capsule of secobarbital and amobarbital, one methaqualone tablet, 197 capsules containing phencyclidine and 1803.6 grams of marijuana. The officers also found three persons on the premises. Carl E. Lee answered the door. In addition, a female by the name of Debra Fuentes was found upstairs with the other defendant, Travis Howard Lee.
Incriminating statements were taken from the appellants when they were taken *676 to the sheriff's office. They did not say anything about who the narcotics belonged to, but they did say that the girl had nothing to do with the narcotics that were found at the house.
Before trial, the defendants pled guilty to the offenses. However, they were subsequently allowed to withdraw their guilty pleas, so that their defense counsel could file a motion to suppress the tangible evidence obtained during the search of the house. That motion was heard prior to the trial and denied by the trial judge.

LAW

I.
The first question presented for determination here is whether or not the affidavit for a search warrant and the sworn testimony of the officers stated sufficient facts and circumstances to enable the justice court judge to ascertain that probable cause existed for the issuance of the search warrant.

(A.)
The United States Supreme Court has stated in general language that probable cause exists when the facts and circumstances in a given situation are sufficient to warrant a man of reasonable caution to believe that seizable objects are located at the place to be searched. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1924). Moreover, the Court has recently, while abandoning past case law,[1] addressed the problem of establishing probable cause when police officers use information obtained from an informant. In Illinois v. Gates, ___ U.S. ___, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Court stated:
For all these reasons, we conclude that it is wiser to abandon the `two-pronged test' established by our decisions in Aguilar and Spinelli. In its place we reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations... . The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis for ... conclud[ing]' that probable cause existed... . We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from Aguilar and Spinelli. (Citations omitted). [Id. at 2332].

(B.)
In the instant case, the officers submitted an affidavit along with sworn unrecorded oral testimony. The handwritten facts, stated in both the affidavit and the warrant, which aided in establishing probable cause may be summarized as follows. First, both Wilks and Warden had known their unidentified informant for a period of one year. Second, both officers had placed the *677 appellants' apartment under surveillance for one week.
In addition, the warrant and affidavit were "form" documents which contained pre-typed language common to all warrants and affidavits of this kind. Some of those sentences were scratched out, some had the notation N/A written by them, and some were left unmarked. Two of the unmarked sentences stated that the informant had provided accurate information in the past which had led to convictions of other people.
The supplemental testimony given by the officers also aided in establishing probable cause. See Wilborn v. State, 394 So.2d 1355 (Miss. 1981); Prueitt v. State, 261 So.2d 119 (Miss. 1972). Warden testified that he told the justice court judge that he and Wilks had received information from other informers to the effect that Howard Lee was seen selling narcotics at a game room and at his apartment. Warden added that he further confirmed or corroborated the informer's personal information in part because the descriptions of the appellants' address, the appellants' vehicle, and the occupants of the appellants' apartment were identical to that seen during the surveillance. Warden also explained to the judge his informer's successful record in providing information for criminal convictions.
In conclusion, the justice court judge could have easily determined that there was probable cause for issuing the warrant. The informer's information was based on personal observations. Moreover, there was both corroboration of the informer's account through various sources as well as other information which indicated that the informer had given reliable information in the past. We find no reversible error in this assignment.

II.
The last issue to be resolved is whether the prosecutor committed reversible error by allegedly emphasizing during closing arguments that the appellant failed to testify. The questioned comments are as follows:
Did these defendants have possession of these drugs or did they not have possession of these drugs? Well, ladies and gentlemen, I think there can be but little doubt. There can be ... It's undisputed that these defendants did have possession of these drugs. Fact: On the 29th of January, 1980, the Mississippi Bureau of Narcotics and the Jackson County Sheriffs Department received information that these drugs were at these defendant's house. That's undisputed fact. Fact: On that same day they obtained a search warrant and went to their apartment and searched and found all that dope. That's a fact, undisputed. Fact: When the crime lab took it up and tested it and ran all their experimental tests and all that fancy equipment that they've got over there, they found marijuana, they found phencyclidine, and they found secobarbital and qualude. These are all facts, they are undisputed facts.

BY MR. WRIGHT: Now we're going to object, Judge. The way he has stated it, "undisputed". On the three witnesses, each one he said that it was undisputed. Therefore, that's commentary on the fact that the defendants did not offer any evidence.

BY MR. LANGSTON: Or testify.

BY MR. WRIGHT: And we move for a mistrial.
BY THE COURT: Overruled.

(A.)
An accused has the right to remain silent, as guaranteed by the Fifth Amendment to the United States Constitution. Moreover, "the failure of the accused, in any case, to testify shall not ... operate to his prejudice or be commented on by counsel." Miss. Code Ann. § 13-1-9 (1972). See also Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Our statute has been strictly construed as prohibiting any reference whatsoever by the prosecutor regarding the defendant's failure to testify. In Yarbrough v. State, 70 Miss. 593, 12 So. 551 (1893), the Court stated:

*678 The word `comment,' as employed in the statute, does not mean to criticize or condemn or anathematize the accused on his failure to testify. It forbids in unmistakable language any comment, friendly or unfriendly. It forbids any remark of any character in any words upon the failure of the accused to testify. The attention of the jury is not to be called to the fact at all by counsel... . [70 Miss. at 594, 12 So. at 551].
Nonetheless, there are times when such comments, similar to those at issue, do not actually constitute error; or if considered error, they do not rise to the level of reversible error.

(B.)

(1.)
For example, although it is error to comment on the accused's failure to testify, it is not error to comment on the defense's failure to offer any evidence whatsoever to counter or explain the state's evidence. We have several cases which have permitted comments similar to those in this case where the defendant failed to produce an available witness or other possible evidence to possibly dispute the state's evidence. Conway v. State, 397 So.2d 1095 (Miss. 1980); Clark v. State, 260 So.2d 445 (Miss. 1972); Lambert v. State, 199 Miss. 790, 25 So.2d 477 (1946); Hanna v. State, 168 Miss. 352, 151 So. 370 (1933).
In this case, the defense chose not to introduce any evidence at all. And, they could have presented the testimony of the girl, Debra Fuentes, who was present when the search was made. We believe that no error was committed when the prosecutor commented on the defense's failure to dispute the state's evidence. See also United States v. Hasting, ___ U.S. ___ n. 4, 103 S.Ct. 1974 n. 4, 76 L.Ed.2d 96 (1983).

(2.)
There is an additional reason for denying relief from this alleged error. In Chapman v. United States, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme Court stated that before a federal constitutional error can be held harmless, the court must be able to declare a reasonable belief that it was harmless beyond a reasonable doubt. Under the circumstances of that case, the Court determined that the prosecutor's comments, as well as a jury instruction, contributed to the petitioner's conviction by telling the jury to draw inferences in favor of the state's theory of the case.
However, in this case, it is rather obvious that the jury would have returned a guilty verdict in spite of the prosecutor's comments. The evidence clearly established that a huge amount of drugs was found in the defendant's residence at a time when both defendants were present. And, the defendants were very careful to point out that the girl was not involved. When that evidence is coupled with a total failure on the part of the defense to dispute the evidence in any manner, it is clear beyond a reasonable doubt that a guilty verdict would have been obtained even without the so-called prejudicial comments.

(3.)
We might also add, that Instruction D-4, granted to the defense, surely offset the prejudice, if any, resulting from the comments. See Carter v. Kentucky, 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981); Lakeside v. Oregon, 435 U.S. 333, 98 S.Ct. 1091, 55 L.Ed.2d 319 (1978). Instruction D-4 told the jury that the failure of the defendants to take the witness stand was not to be considered in weighing the evidence presented during the case. Under these circumstances, we find no error in the prosecutor's remarks which would justify reversal.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, DAN M. LEE and ROBERTSON, JJ., concur.
HAWKINS, J., dissents.
HAWKINS, Justice, dissenting:
In deference, I must dissent from that portion of the majority opinion which finds *679 the repeated comment by the prosecuting attorney on the defendants' failure to testify harmless error.
Throughout my trial experience I have found one principle which weans all prosecuting attorneys: the state must make no comment directly or indirectly on the failure of an accused to testify. This principle is so deeply engrafted in this Court's decisions that there is not a prosecuting attorney in this state unaware of this emphatic proscription.
Indeed, when a prosecuting attorney would make such a slip in my judicial district, the case did not get to this Court. The circuit judge, upon objection, granted a mistrial on the spot.
Until this opinion, prosecuting attorneys knew better than to make any such comment. Hereafter, neither they nor the circuit judges will ever be sure.
Mississippi Code Annotated § 13-1-9 (1972) specifically provides that the failure of an accused to testify shall not be commented on. In a formidable array of cases we have held any such comment reversible error. Some recent decisions are: Wilson v. State, 433 So.2d 1142 (1983); Peterson v. State, 357 So.2d 113 (1978); Brown v. State, 340 So.2d 718 (1976); Hines v. State, 339 So.2d 56 (1976); Clark v. State, 260 So.2d 445 (1972).
The majority states that this comment did not violate the United States Constitution. The Legislature and this Court have set the criteria for guidance of prosecuting attorneys and defense counsel on this proposition. There is no need on this point of law to resort to the interpretation of the United States Constitution by the United States Supreme Court. We have an abundance of authority on our own. A reading of the United States Supreme Court decisions will reveal the federal rule is different from this Court's decisions, as well as our state statute.
The majority then concludes that because defense counsel requested and were granted an instruction to the jury that failure to take the witness stand was not to be considered in weighing the evidence against the defendants "offset the prejudice". Of course, had the state requested and been granted such an instruction over the objection of the defendant, it would have constituted reversible error. See Hines v. State, 339 So.2d at 57.
While it is a mystery to me that a defense counsel would have requested such instruction, in my view this did not "offset the prejudice" in this case, but rather exacerbated it. After the court informed the jury they were not to consider such failure to testify, the prosecuting attorney, in direct, flat contradiction to the court's instruction, four times in his argument used the word "undisputed" in commenting upon the evidence. There was but one discernible message from this repeated comment: these defendants could have, but did not testify.
It is my view that in the trial of criminal cases, our rules need to be consistent and even-handed whether applied to the state or the defense. Circuit judges and prosecuting attorneys need to know where they stand.
Hereafter, when a prosecuting attorney comments upon the failure of an accused to testify, they will not know.
I would reverse.
NOTES
[1] In Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the Court stated that: "[T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant ... was `credible' or his information `reliable'." 378 U.S. at 114-15, 84 S.Ct. at 1514. Thus, the first prong of the Aguilar test concerned the informant's veracity. Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In his concurring special opinion in Spinelli, Justice White noted that an informant's basis of knowledge could result from (1) the possibility that the informant himself saw or perceived the fact or facts asserted, or (2) the possibility that the informant obtained the information from someone else. In the latter case, it would be necessary to determine how the informer's informant obtained such information. The Gates decision now provides that these factors should be considered, but that their existence is not a necessary condition to establishing probable cause.