525 So.2d 776 (1988)
Charles Everett CARNEY
v.
STATE of Mississippi.
No. 57395.
Supreme Court of Mississippi.
April 13, 1988.
Rehearing Denied June 3, 1988.
*778 Phillip W. Broadhead, Columbia, for appellant.
Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
SULLIVAN, Justice, for the Court:
On April 19, 1984, Charles Everett Carney was convicted of possession of more than one ounce of marijuana with intent to deliver. Carney appeals this conviction and assigns the following as error:
1. The court erred in allowing the State to proceed in Case Number 3928-2, possession of marijuana with intent to deliver or sell over one ounce but less than one kilogram, before Case Number 3900-2, receiving stolen property, in violation of the defendant's right to effective assistance of counsel under Section 26 of the Mississippi Constitution, as made applicable to the States under the Fourteenth Amendment;
2. The court erred in refusing to suppress the search warrant issued for the defendant's residence, which was based on insufficient evidence to establish probable cause to issue such search warrant, in violation of Section 23 of the Mississippi Constitution, and the Fourth Amendment of the United States Constitution, as made applicable to the States by the Fourteenth Amendment;
3. The court erred in refusing to suppress evidence, and testimony pertaining thereto, obtained by the search warrant issued for the defendant's residence, in violation of Section 23 of the Mississippi Constitution, and the Fourth Amendment to the United States Constitution, as made applicable to the States under the Fourteenth Amendment;
4. The court erred in refusing the defendant's motion for directed verdict based on lack of evidence establishing that the substance presented in evidence was marijuana;
5. The court erred in refusing to grant defendant's instruction No. D-1; and
6. The court erred in granting State's instruction S-3.
On March 31, 1983, an indictment was filed in the Circuit Court of Marion County charging Charles Everett Carney with the unlawful possession of more than one ounce (but less than one kilogram) of marijuana with intent to deliver, in violation of Section 41-29-139, Mississippi Code Annotated (1972), as Amended.
On January 25, 1983, Carroll Bryant, an investigator with the Columbia Police Department, was investigating a burglary which had occurred the day before. Bryant had received information from a confidential informant that a television and a radio which had been taken in the burglary were seen by the informant at Charles Carney's residence. Bryant appeared before Justice Court Judge Lloyd Day and furnished him with a search warrant as well as an affidavit which supported the search warrant request. A search warrant was issued pursuant to this request.
Later that day a search was conducted of Carney's house and its curtilage. During this search the police officers found the television and radio as well as a quantity of marijuana.
Carney was convicted of the unlawful possession of this marijuana and he asserts that the trial court's failure to suppress it as the fruit of an unlawful search and seizure, was erroneous.
Carney was charged with receiving stolen property as well as possession of marijuana. Both cases were set for the same day. Carney's attorney thought that the stolen property case was to be heard first and claimed to have received a communication from the court to that effect. When the marijuana charge was called for trial Carney's attorney moved to dismiss both charges. The trial judge proceeded with the trial of the marijuana charge.
Investigator Bryant testified that he searched Carney's house and found numerous small brown envelopes (nickel bags) containing marijuana, a pair of scales, and a number of envelopes which were suspected of containing marijuana or residue. Bryant testified that the television and radio *779 which were the subject of the search warrant and the object of the search were also found.
Linda Faye Weeks, a forensic scientist employed by the Mississippi Bureau of Narcotics, analyzed the substance in question and testified that, in her opinion, it was marijuana.
The defense called Investigator Bryant back to the stand. Bryant testified that Ivy Lee Carney was seen near Charles Carney's house when the police arrived to execute the search warrant.
The jury found Carney guilty and he was sentenced to twenty (20) years in the Mississippi Department of Corrections and fined Fifteen Thousand ($15,000.00) Dollars.

I.

DID THE TRIAL COURT ERR IN ALLOWING THE STATE TO PROCEED IN CASE NUMBER 3928-2, POSSESSION OF MARIJUANA WITH INTENT TO DELIVER OR SELL OVER ONE OUNCE BUT LESS THAN ONE KILOGRAM, BEFORE CASE NUMBER 3900-2, RECEIVING STOLEN PROPERTY, IN VIOLATION OF THE DEFENDANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER SECTION 26 OF THE MISSISSIPPI CONSTITUTION, AND THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION, AS MADE APPLICABLE TO THE STATES UNDER THE FOURTEENTH AMENDMENT?
Carney faced two criminal charges which arose from the search of his property, receiving stolen property and felony possession of marijuana. Originally the instant case (marijuana possession) was to be tried on March 20, 1984, and the other case (receiving stolen property) was to be tried on March 26, 1984.
Carney's attorney sought and obtained a continuance of the marijuana charge. Both cases were then to be tried on March 26, 1984. This was understood by Carney's attorney, however, he thought that the stolen property charge was to be tried first and claimed to have received a message to that effect.
Carney's attorney stated that he received a message from his secretary that someone with the court indicated that the stolen property charge was set in front of the marijuana charge. This allegation is not supported by any sworn testimony. Carney's attorney did not ask for a continuance, neither did he request that the stolen property charge be tried first, instead he moved for the dismissal of both charges. The trial judge reserved a ruling on the motion and the marijuana charge was tried to verdict.
On appeal Carney asserts that he was denied his right to counsel because the marijuana charge was tried first. Carney contends that the setting of the cases denied him a reasonable opportunity to prepare for trial. Citing Cruthirds v. State, 190 Miss. 892, 2 So.2d 145 (1941).
Under this assignment Carney alleges that his attorney at trial did not have an adequate opportunity to prepare for trial and was therefore unable to render effective assistance. Carney does not allege with any particularity what acts or omissions by his attorney or the court deprived him of this constitutional right. The trial judge granted one continuance on the marijuana charge and at trial Carney's attorney did not seek an additional continuance  instead he sought the dismissal of both of the pending charges.
The trial court may not be put in error for failing to grant a continuance of the marijuana charge since one was not requested. See Warren v. State, 456 So.2d 735 (Miss. 1984); House v. State, 445 So.2d 815 (Miss. 1984); Colburn v. State, 431 So.2d 1111 (Miss. 1983); Read v. State, 430 So.2d 832 (Miss. 1983); Ponder v. State, 335 So.2d 885 (Miss. 1976); Rule 6(b) Miss.Sup. Ct.Rules. In Cruthirds v. State, supra, upon which Carney attempts to rely, defense counsel requested additional time to prepare for trial and this request was denied. Cruthirds, 190 Miss. at 896, 2 So.2d at 146.
*780 To successfully challenge his attorney's representation at trial, Carney must meet the two-prong test for ineffective assistance of counsel set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by this Court.
Applying the Strickland v. Washington test, this Court in Waldrop v. State, 506 So.2d 273 (Miss. 1987), stated:
Since the advent of the holding in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we have ascribed to the two-prong analysis of ineffectiveness allegations fashioned by the United States Supreme Court. Thereby, there exists a two-fold inquiry into the issue of ineffective assistance of counsel, focusing on (1) whether counsel's performance was deficient, and if so, (2) whether the deficient performance was prejudicial to the defendant. See also, Alexander v. State, 503 So.2d 235, 240 (Miss. 1987); Leatherwood v. State, 473 So.2d 964, 968 (Miss. 1985); Lambert v. State, 462 So.2d 308, 316 (Miss. 1984); Thames v. State, 454 So.2d 486, 487 (Miss. 1984). Though there is a strong but rebuttable presumption that counsel's conduct falls within the wide range of reasonable professional assistance, Gilliard v. State, 462 So.2d 710, 714 (Miss. 1985), this Court must determine based on the totality of the circumstances whether counsel's efforts were both deficient and prejudicial, thus necessitating a reversal. Read v. State, 430 So.2d 832, 839 (Miss. 1983).
Waldrop, 506 So.2d at 275.
Since Carney does not allege that any particular act or omission of trial counsel falls outside the range of "reasonable professional assistance" he is unable to satisfy the first prong of the Strickland test. Gilliard v. State, 462 So.2d 710, 714 (Miss. 1985). Neither does Carney allege that the magnitude of his counsel's ineffectiveness undermines confidence in the outcome of the trial. See Lambert v. State, 462 So.2d 308, 316-17 (Miss. 1985). Absent such a showing, Carney cannot satisfy the second prong of the Strickland test. This assignment of error is therefore without merit.

II.

THE COURT ERRED IN REFUSING TO SUPPRESS THE SEARCH WARRANT ISSUED FOR THE DEFENDANT'S RESIDENCE, WHICH WAS BASED ON INSUFFICIENT EVIDENCE TO ESTABLISH PROBABLE CAUSE TO ISSUE SUCH SEARCH WARRANT, IN VIOLATION OF SECTION 23 OF THE MISSISSIPPI CONSTITUTION, AND THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION, AS MADE APPLICABLE TO THE STATES BY THE FOURTEENTH AMENDMENT.

III.

THE COURT ERRED IN REFUSING TO SUPPRESS EVIDENCE, AND TESTIMONY PERTAINING THERETO, OBTAINED BY THE SEARCH WARRANT ISSUED FOR THE DEFENDANT'S RESIDENCE, IN VIOLATION OF SECTION 23 OF THE MISSISSIPPI CONSTITUTION, AND THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AS MADE APPLICABLE TO THE STATES UNDER THE FOURTEENTH AMENDMENT.
In the first of these assignments, Carney challenges the validity of the search warrant which was issued. In the second, Carney asserts that the evidence should have been suppressed because the search warrant was not based upon probable cause.
On January 25, 1984, Carroll Bryant, an investigator with the Columbia Police Department, was investigating a burglary which had occurred the day before. In this burglary a Sears television and a radio were taken as were some articles of jewelry and other small items. A search warrant was issued for these items and during the course of the search of Carney's home and property the police found the marijuana which serves as the basis of a criminal charge against Carney.
*781 Carney's attorney moved ore tenus to suppress the evidence and a suppression hearing was held. At the suppression hearing Investigator Bryant testified about the circumstances under which he obtained the search warrant as well as the circumstances surrounding the search. Bryant testified that he appeared before Justice Court Judge Lloyd Day on January 25, 1983. Bryant informed Judge Day that he had received information from a confidential source, who had previously provided information which had led to arrests and convictions, and that the informant had seen a Sears television and a radio (which fit the description of the stolen items) at Carney's residence. Bryant submitted an affidavit which provided the basis for the issuance of the search warrant. Further, Bryant testified that Judge Day asked him a number of questions concerning the search warrant request. Bryant testified that the other items which were included in the search warrant were not seen at Carney's residence by the informant.
The search warrant was issued and the police officers went to Carney's residence to execute it. Arriving at Carney's house the police entered the patio area and began their search. The first item which the police discovered while executing this warrant was the radio. This radio was on Carney's patio.
Next, the police found two envelopes containing marijuana under a wooden spool (which had contained some type of cable). This spool was also in the patio area. Investigator Bryant was questioned regarding the search of the area under the spool and stated:
Q. Okay, and is it not also a fact that you located most of these parcels that you contend contain drugs in places where you would not normally expect to find a radio or television; that is to say, for example, under the spool in the patio, you wouldn't have been able  you would have been able to see a television under the spool had it been there, or a radio, isn't that correct?

A. Certainly, certainly.

Q. So when you were looking under the spool, you weren't looking for the radio or the television; were you?

A. No, sir, I really wasn't. (Emphasis added).
A photograph of the spool and patio clearly shows that no radio or television could have possibly been secreted under the spool.
Shortly after finding the marijuana under the spool, Sheriff Forbes and John Pittman were checking an old stove in the yard and found some aluminum foil. Investigator Bryant was questioned about the search of that package:
Q. When the foil was opened, were you not in fact or was that officer not in fact looking for marijuana?
A. No, sir, he was looking for stolen property.
Q. What property was he looking for in the foil?
A. There could be rings and stuff that was stolen from that burglary on the day prior to the search warrant.
Q. But you've already told us that you did not have any information that any rings had been seen in the house or that they were even there?
A. That's correct.
This aluminum foil contained 20 envelopes of marijuana. After finding this marijuana the officers entered the house.
The first item found in the house was one small brown envelope of marijuana in the living room of the home, on top of the bar. The next item which was found in the house was the television described in the search warrant. Officer Pittman found this television in the bedroom. Although the television and radio were the only items which were seen in Carney's residence by the informant, the police continued searching after both had been located. Investigator Bryant was questioned about the posture of the search and testified as follows:
Q. Okay. At the time that you located the television, is it not correct that you had located all items that you had had any information were located in Mr. Carney's house?
A. That I had information on, yes, sir.

*782 Q. Yet you continued to search?
A. Yes, sir.
On top of Carney's refrigerator the police found two closed boxes. One box contained unused brown envelopes, the other contained envelopes which were suspected of having marijuana residue in them. After finding the boxes, the police found a postage scale in Carney's kitchen cabinet.
The police then looked in the attic of Carney's house and found a glass jar containing 50 small brown envelopes, which each contained marijuana.
Investigator Bryant and Sheriff Forbes steadfastly maintained that at no time were they searching for marijuana. It cannot be said that the police were conducting a warrantless search for marijuana based on exigent circumstances since the police themselves testified that they were not searching for marijuana.
Investigator Bryant admitted that the "other items" had not been seen by the informant at Carney's residence and that the police had no information that those items were present. The "other items" which the warrant purported to authorize the police to search for were never found.
Bryant testified that three or four months before the search he had received information from the Mississippi Bureau of Narcotics that Carney was suspected of possessing marijuana.
At the suppression hearing the defense called Edward Lee Franklin a/k/a Hunk-of-Man, who testified that he talked to Police Officer John Pittman and told Pittman that he had seen a radio on Carney's property. Franklin testified that the radio was at a juke which was adjacent to Carney's house.
Officer Pittman was called as an adverse witness and testified that he had interviewed Franklin as well as a number of other people while trying to locate the stolen property. At the conclusion of the suppression hearing the trial judge reserved his ruling on the motion. The judge later allowed Carney's attorney to enter a continuing objection to the introduction of evidence pertaining to the warrant or search. The marijuana was introduced into evidence and Carney assigns the trial judge's failure to suppress it as error.
Carney argues that the warrant was issued without probable cause under the authority of Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (applying the totality of the circumstances test to determine whether probable cause existed for the issuance of a search warrant); and Lee v. State, 435 So.2d 674 (Miss. 1983) (adopting the totality of the circumstances test). Carney further points out that the exclusionary rule renders inadmissible any evidence obtained during an illegal search. Keys v. State, 283 So.2d 919 (Miss. 1973); Orick v. State, 140 Miss. 184, 105 So. 465 (1925); Tucker v. State, 128 Miss. 211, 90 So. 845 (1922).
The right which is asserted in this assignment is guaranteed by the Fourth Amendment to the Constitution of the United States through the Fourteenth Amendment and an identical provision in Article III, Section 23, of the Mississippi Constitution (1890). In Cannaday v. State, 455 So.2d 713 (Miss. 1984), this Court indicated that, subject to the guidance of federal law, Mississippi Jurisprudence will control the resolution of issues involving rights which are adequately and independently secured by the laws of this State. Cannaday, 455 So.2d at 722. See Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

PROBABLE CAUSE
To test the sufficiency of the search warrant it is necessary to apply the totality of the circumstances test set out in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and adopted by this Court in Lee v. State, 435 So.2d 674 (Miss. 1983). In Lee, we stated:
The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence *783 of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for.... conclud[ing]" that probable cause existed.
Lee, 435 So.2d at 676, quoting Illinois v. Gates, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548 (1983).
This Court has routinely applied the totality of the circumstances test. See Lockett v. State, 517 So.2d 1317, 1325 (Miss. 1987); Alexander v. State, 503 So.2d 235, 239 (Miss. 1987); Seales v. State, 495 So.2d 475, 478 (Miss. 1986); Drane v. State, 493 So.2d 294, 298-99 (Miss. 1986); Harper v. State, 485 So.2d 1064, 1065 (Miss. 1986); Garvis v. State, 483 So.2d 312, 314 (Miss. 1986); Jones v. State, 481 So.2d 798, 800 (Miss. 1985); Walker v. State, 473 So.2d 435, 438 (Miss. 1985); Breckenridge v. State, 472 So.2d 373, 376 (Miss. 1985); McCommon v. State, 467 So.2d 940, 941 (Miss. 1985); Hester v. State, 463 So.2d 1087, 1090 (Miss. 1985).
The prosecution relies on our holding in Hall v. State, 455 So.2d 1303 (Miss. 1984):
Probable cause for issuance of a search warrant is present when facts and circumstance within the officer's knowledge, or of which he had reasonable trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it.
Hall, 455 So.2d at 1304.
As far as it goes Hall v. State, is a correct statement but it is not sufficiently precise to cover the facts in this case. If a man of average caution had before him information which showed only that a crime had been committed and that X had committed it, he would have probable cause only for the issuance of an arrest warrant. Just because X committed a crime it does not necessarily follow that there is probable cause to search X's dwelling for evidence of that crime. See 1 W. LaFave, Search and Seizure, § 3.1(b), pages 544-546 (probable cause).
The standard for determining if probable cause existed is an objective one. The facts upon which the State relied to establish probable cause must be sufficient to "warrant a man of reasonable caution in the belief that the action taken was appropriate." Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889, 906 (1968).
The State bears the burden of proving that probable cause existed. Addressing this issue in Canning v. State, 226 So.2d 747 (Miss. 1969), this Court stated:
It is, of course, elementary that the burden is usually upon those who assert an affirmative to establish their thesis, and this is particularly true where constitutional questions are involved. The burden is upon the State of Mississippi to show that search and seizure of property were done in a lawful manner, otherwise the evidence obtained is not admissible against those who have "standing" to object to the search, and where objection is made at the proper time. (Citations omitted).
Canning, 226 So.2d at 752.
Here the justice court judge was informed by Officer Bryant that the informant had personally observed a radio and television on Carney's property. Bryant also supplied the judge with a written affidavit. The informant was a reliable source whose information had previously led to arrests and convictions.
In Harper v. State, 485 So.2d 1064 (Miss. 1986), we held that the prior use and reliability of the informant and the personal observations of the informant satisfied the totality of the circumstances test adopted in Lee. Harper, 485 So.2d at 1066. Therefore the justice court judge had a "substantial basis" for concluding that it was appropriate to authorize a search of Carney's residence for the radio and television.
However, the testimony of the police officers indicates that the portion of the warrant which purported to authorize a search for the "other small items" was not based upon probable cause.
Investigator Bryant testified at the suppression hearing as follows:
Q. You found the two items that you had information about?

*784 A. Yes, sir, we found those.
Q. And you found no other items that were allegedly stolen; did you?
A. No, sir, we did not.
Q. And, as a matter of fact, that is inconsistent with the information that you had; wasn't it?
A. Yes, sir.
Q. Okay. You told the judge that your informant had seen a television and a radio?
A. Yes, sir.
Q. Is that right?
A. That's correct.
Q. And you gave him no other information that would lead him to believe that you had any basis for believing that the other items were there; did you?
A. No, sir.
* * * * * *
At trial, Sheriff Forbes testified about the precision with which search warrants were drafted:
Q. So you weren't looking for marijuana;
A. No.
Q.  is that right?
A. That's right.
Q. Okay. Because you didn't have a search warrant for marijuana; did you?
A. Indirectly, yeah.
Q. You had an indirect search warrant for marijuana?
A. Whenever you get
Q. No, I'm asking you did you have an indirect search warrant for marijuana?
A. Not naming marijuana in particular, no.
* * * * * *
Q. So you were not searching for marijuana pursuant to any warrant; were you?
A. Beg your pardon?
Q. I say you were not searching for marijuana pursuant to any warrant; were you?
A. No. All the search warrants I ever had, though, they read to cover everything.
No probable cause existed to believe that the "other items" were to be found on Carney's property. Although we review such decisions only to determine whether "the magistrate has substantial basis for concluding that probable cause existed," we cannot find probable cause where it is absent. This record does not reflect that the issuing magistrate had any basis whatsoever for concluding that probable cause existed with regard to these "other items" in the warrant.
We submit that the portion of the warrant not based upon probable cause was invalid. The alternate view is that the inclusion of these items taints the entire warrant. However, it furthers this State's policy of encouraging the use of warrants to sever the properly listed items from the improperly listed ones.
In 2 W. LaFave, Search and Seizure, § 4.6(f) the treatise discusses the severability of a warrant as follows:
Assume that a search warrant is issued to search a certain place for several items, but it is later determined that some but not all of those items are described with sufficient particularity, or that probable cause has been established as to some but not all of the items described. Is the entire warrant tainted, so that suppression might be sought as to everything seized in the course of its execution, or is it possible to somehow sever the tainted portion from the sound portion? The leading case on this question is Aday v. Superior Court,[1] where the warrant properly described two obscene books by name but improperly also described various other articles. The court held:
Although the warrant was defective in the respects noted, it does not follow that it was invalid as a whole. Such a conclusion would mean that the seizure of certain articles, even though proper if viewed separately, must be condemned merely because the warrant *785 was defective with respect to other articles. The invalid portions of the warrant are severable from the authorization relating to the named books, which formed the principal basis of the charge of obscenity. The search for and seizure of these books, if otherwise valid, were not rendered illegal by the defects concerning other articles. * * * In so holding we do not mean to suggest that invalid portions of a warrant will be treated as severable under all circumstances. We recognize the danger that warrants might be obtained which are essentially general in character but as to minor items meet the requirement of particularity, and that wholesale seizures might be made under them, in the expectation that the seizure would in any event be upheld as to the property specified. Such an abuse of the warrant procedure, of course, could not be tolerated.[2]
The Aday rule is sound; it would be harsh medicine indeed if a warrant which was issued on probable cause and which did particularly describe certain items were to be invalidated in toto merely because the affiant and magistrate erred in seeking and permitting a search for other items as well.
2 W. LaFave, Search and Seizure, page 257-258.
The lawful portion of any search warrant determines the permissible intensity of the search. The Supreme Court has stated, "The same meticulous investigation which would be appropriate in a search for two small cancelled checks could not be considered reasonable where agents are seeking a stolen automobile or an illegal still." Harris v. United States, 331 U.S. 145, 152, 67 S.Ct. 1098, 1102, 91 L.Ed. 1399, 1407 (1947). Further, the duration of the search is likewise determined by the warrant. In his treatise Professor LaFave states:
When the purposes of the warrant have been carried out, the authority to search is at an end... . And this is so notwithstanding the fact that prior to the discovery of the named items other incriminating evidence has been found; that discovery in no way broadens the authority of the police under the search warrant.
2 W. LaFave, Search and Seizure, § 4.10(D), pages 327-330 (footnotes omitted).
The rule is simple. Unless the marijuana was discovered during a legal search, it may not be seized. If it was illegally seized, it may not be admitted into evidence. It is therefore important to examine the legality of the particular intrusions which enabled the police to see this marijuana to determine if these intrusions were outside the legitimate scope of a warrant. Specifically, the question is whether the police could look under the spool and in the foil for the television. The police themselves admit that they were not looking for the television at the time the area under the spool and the aluminum foil were searched. Likewise, when the police looked in the attic of the home the television and radio had already been found, thus their lawful authority to search had ended.
The marijuana which the officers seized was not the subject of the search warrant. However, the warrant is important in that in order to fall within the plain view doctrine, the evidence must have been discovered pursuant to a lawful search. In Isaacks v. State, 350 So.2d 1340 (Miss. *786 1977), this Court addressed a plain view seizure of contraband and stated:
It is also apparent from the decisions of the Supreme Court of the United States that the "plain view" doctrine does not eliminate the requirement that seizure of contraband discovered while in "plain view" must comply with the Fourth Amendment requirements and in the absence of "exigent circumstances" be based on a valid warrant. Furthermore, the fact that the evidence the officers anticipated seizing at a particular place turns out to be in plain view when the officers arrive, cannot justify their seizure without obtaining a valid warrant.
Isaacks, 350 So.2d at 1345.
See also, Salisbury v. State, 293 So.2d 434, 437 (Miss. 1974).
Likewise in Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality), the Supreme Court stated the proper standard for determining the applicability of the plain view doctrine as follows:
The question whether property in plain view of the police may be seized therefore must turn on the legality of the intrusion that enables them to perceive and physically seize the property in question.
Brown, 460 U.S. at 737, 75 L.Ed.2d at 511.
In Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), the Supreme Court addressed the plain view doctrine and stated:
It is well established that under certain circumstances the police may seize evidence in plain view without a warrant. But it is important to keep in mind that, in the vast majority of cases, any evidence seized by the police will be in plain view, at least at the moment of seizure. The problem with the "plain view" doctrine has been to identify the circumstances in which plain view has legal significance rather than being simply the normal concomitant of any search, legal or illegal.
Coolidge, 403 U.S. at 465, 29 L.Ed.2d at 582 (plurality).
It is, at this stage, of no legal significance that the marijuana was discovered in plain view; the threshold inquiry is whether a legal search brought the contraband into plain view. See Texas v. Brown, supra; Coolidge v. New Hampshire, supra; Isaacks v. State, supra; and Salisbury v. State, supra.
In Coolidge, the Supreme Court discussed both the rationale for and the limits of the plain view doctrine and stated:
The rationale for the "plain view" exception is evident if we keep in mind the two distinct constitutional protections served by the warrant requirement. First, the magistrate's scrutiny is intended to eliminate altogether searches not based on probable cause. The premise here is that any intrusion in the way of search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity... . The second, distinct objective is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the "general warrant" abhorred by the colonists, and the problem is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings... .
The limits on the doctrine are implicit in the statement of its rationale. The first of these is that plain view alone is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent "exigent circumstances." Incontrovertible testimony of the senses that an incriminating object is on premises belonging to a criminal suspect may establish the fullest possible measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure. (Citations omitted).
Coolidge, 403 U.S. at 467-468; 29 L.Ed.2d at 583-584.
*787 In Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), a majority of the Supreme Court of the United States held that the plain view doctrine requires that the police have probable cause to search or seize, without a warrant, evidence which is in plain view. Hicks, at ___, 107 S.Ct. at 1153-54. If in fact the police had probable cause to believe that marijuana was on the premises, then (absent exigent circumstances) they must procure a warrant. It is perfectly proper for law enforcement officials to secure an area to protect potential evidence while a warrant is being procured. The fact that contraband is believed to be on the premises cannot in and of itself justify a warrantless search. The discovery of evidence does not "create" an exigent circumstance. See Isaacks v. State, 350 So.2d 1340, 1345 (Miss. 1977) (explaining that the plain view doctrine does not eliminate the requirement that, absent exigent circumstances, seizures must be based on a valid warrant).
Applied to the facts of this case the plain view doctrine requires that in order to be proper the seizure must have occurred pursuant to a lawful search and probable cause must have existed to believe that the substance was contraband. See 2, W. LaFave, Search and Seizure, § 4.10(d), pages 324-335 (scope and intensity of search). As the search warrant was properly issued only for the television and radio, then only that contraband discovered in plain view during the search for the television and radio is properly admissible. The forthright testimony of Officer Bryant shows that the police were not searching for the radio or television when they found (1) two envelopes of marijuana under the wooden spool; (2) twenty envelopes of marijuana inside some aluminum foil in the oven; (3) 50 envelopes of marijuana in the attic (both the television and the radio had been located prior to this search and seizure). Since these items should have been suppressed, then only the single envelope of marijuana which was found in the living room on top of the bar was properly admitted into evidence.
Since the police testified that they were not searching for marijuana, it cannot be said that this was an exigency search for contraband. Further, since the police were the only people on the property there were no exigent circumstances which justified this search.
This Court will not sanction the use of "indirect search warrants." Neither will we create exigent circumstances where none exist. The Fourth Amendment was designed to protect against "general warrants" and other exploratory searches. There is no evidence that the "other items" were ever on Carney's property; certainly, none were found there.
We are of the opinion that only the single envelope of marijuana found in Carney's living room was properly admitted into evidence.

IV.

DID THE COURT ERR IN REFUSING THE DEFENDANT'S MOTION FOR DIRECTED VERDICT BASED ON LACK OF EVIDENCE ESTABLISHING THAT THE SUBSTANCE PRESENTED IN EVIDENCE WAS MARIJUANA?
Under this assignment of error Carney cites no authority and we therefore decline to consider the assignment. Ramseur v. State, 368 So.2d 842, 844 (Miss. 1979).

V.

DID THE COURT ERR IN REFUSING TO GRANT INSTRUCTION D-1?
Instruction D-1 is a peremptory instruction and this assignment of error is unsupported by any legal authority and is therefore not properly before this Court. See Ramseur v. State, 368 So.2d 842, 844 (Miss. 1979); Dozier v. State, 247 Miss. 850, 157 So.2d 798 (1963).

VI.

DID THE COURT ERR IN GRANTING INSTRUCTION S-3?
Instruction S-3 reads as follows:
The Court instructs the jury that the defendant, Charles Everett Carney, has *788 been charged with the crime of "Possession of Marihuana with Intent to Deliver or Sell over One Ounce but less than One kilogram," and therefore, if you find from the evidence in this case, beyond a reasonable doubt, that the defendant, on or about the 25th day of January, A.D., 1983, in Marion County, Mississippi, did wilfully, unlawfully, feloniously, and knowingly and with intent to deliver or sell, have in his possession or under his conscious control, a controlled substance, to-wit: Marihuana [sic], a schedule I controlled substance, in an amount over one ounce, but less than one kilogram, to-wit: 150.0 grams of marihuana [sic], then you shall find the defendant guilty as charged.
Carney argues that this instruction should have been refused by the court but provides no authority to support this proposition. Carney further argues that the trial judge made a mistake in granting S-3 since no instruction on constructive possession was given.
The instruction as amended by the trial court was a proper statement of the law and the trial judge should not be put in error for granting this instruction. Johnson v. State, 475 So.2d 1136, 1140 (Miss. 1985); Lancaster v. State, 472 So.2d 363, 367 (Miss. 1985).
Furthermore we will not put the trial court in error for refusing a constructive possession instruction as none was requested. Newell v. State, 308 So.2d 71, 78 (Miss. 1975); Lannom v. State, 464 So.2d 492, 496 (Miss. 1985).
Since the search warrant was partially invalid, only the single envelope of marijuana found in Carney's living room was properly admitted into evidence. We reverse and remand this cause so that Carney may be tried for the possession of only that marijuana which was properly obtained.
REVERSED AND REMANDED.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, and ZUCCARO, JJ., concur.
ROY NOBLE LEE, C.J., and ANDERSON and GRIFFIN, JJ., dissent.
ANDERSON, Justice, dissenting:
I respectfully dissent.
As I understand the facts of this case, police officers, armed with a search warrant, arrived at the defendant's house looking for stolen goods. The officers first found a radio that was described in the warrant, then they found two nickel bags of marijuana under an outdoor table. Some twenty other packages of marijuana were found in the yard nearby.
I would submit that once the officers found the radio described in the warrant, then the marijuana discovered by them (in plain view or not) should have been admitted into evidence. Lockett v. State, 517 So.2d 1317 (Miss. 1987).
Once the officers saw a quantity of marijuana in plain view, it was not unreasonable for them to suspect the presence of additional drugs. But if they had left to get a warrant, any additional marijuana would have been well on its way down the sewer pipe before they could return. Warrantless searches are permissible if exigent circumstances are present. E.G., U.S. v. Shaw, 701 F.2d 367, 376 (5th Cir.1983); cert. denied 465 U.S. 1067, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984); Wright v. Edwards, 343 F. Supp. 792, 798 (N.D.Miss. 1972); Smith v. State, 419 So.2d 563, 571-72 (Miss. 1982). In my opinion, the "plainview" discovery of marijuana created such an exigent circumstance with regard to any additional drugs on the premises.
I would affirm the conviction and sentence.
ROY NOBLE LEE, C.J., and GRIFFIN, J., join this dissent.
NOTES
[1] 55 Cal.2d 789, 13 Cal. Rptr. 415, 362 P.2d 47 (1961).
[2] To the same effect are LeBron v. Vitek, 751 F.2d 311 (8th Cir.1985); United States v. Fitzgerald, 724 F.2d 633 (8th Cir.1983); United States v. Gomez-Soto, 723 F.2d 649 (9th Cir.1984); United States v. Riggs, 690 F.2d 298 (1st Cir.1982); United States v. Christine, 687 F.2d 749 (3d Cir.1982); United States v. Freeman, 685 F.2d 942 (5th Cir.1982); United States v. Jacob, 657 F.2d 49 (4th Cir.1981); Palmer v. State, 426 So.2d 950 (Ala.Cr.App. 1983); State v. Maddasion, 130 Ariz. 306, 636 P.2d 84 (1981); State v. Kealoha, 62 Hawaii 166, 613 P.2d 645 (1980); Commonwealth v. Lett, 393 Mass. 141, 470 N.E.2d 110 (1984); State v. LeBron, 217 Neb. 452, 349 N.W.2d 918 (1984); Norris v. State, 640 P.2d 1374 (Okl.Crim. 1982); Commonwealth v. Casuccio, 308 Pa.Super. 450, 454 A.2d 621 (1982); Walthall v. State, 594 S.W.2d 74 (Tex. Crim. App. 1980); State v. Olson, 32 Wash. App. 555, 648 P.2d 476 (1982); State v. Noll, 116 Wis.2d 443, 343 N.W.2d 391 (1984).